IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ANNETTE BETANCOURT, | ) | Case No. 17-40739-13 drd |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ANNETTE BETANCOURT, | ) | Adv. Proc. No. 17-04144-drd |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OPINION**

Before the Court is the Complaint to Determine Dischargeability of a Debt filed by Debtor Annette Betancourt (the "Debtor") against the United States of America, Department of the Treasury, Internal Revenue Service (the "IRS") seeking a determination that a certain obligation related to a first-time homebuyer credit is a dischargeable general unsecured debt because it does not meet any of the exceptions to discharge set forth in 11 U.S.C. §523. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334(b), 157(a) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the

Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that the IRS holds a debt which is dischargeable.

BACKGROUND

The following facts have been stipulated by the parties. The Debtor purchased a home in Liberty, Missouri, in 2008 and claimed a first-time homebuyer credit on her 2008 federal income tax return using Form 5405 for that purpose. She received a one-time tax credit in the amount of $7,500 (the "Tax Credit").

The mechanics of the Tax Credit are governed by Section 36(a) of the Internal Revenue Code which provides a refundable tax credit to a first-time homebuyer who purchased a principal residence on or after April 9, 2008, and before May 1, 2010. 26 U.S.C. §36(a) and (h). The credit is "recaptured" through the imposition on the taxpayer of a tax increase equal to 6 2/3 % of the amount of the credit for each year in the recapture period, or the 15 taxable years beginning with the second taxable year following the year in which the purchase of the residence was made. 26 U.S.C. §36(f)(1) and (7). Applying these provisions to this case, the Debtor was to pay an additional $500 for 15 taxable years beginning in 2010 and continuing through 2024.

The Debtor filed a voluntary petition under Chapter 13 on March 20, 2017. The IRS filed a proof of claim listing an unsecured priority claim in the amount of $393 for an outstanding tax liability owed for tax year 2016. On Debtor's Amended Schedule E/F, she listed a general unsecured claim for the IRS in the amount of $4,000. The IRS did not file a proof of claim listing a general unsecured claim for any amount of the first-time homebuyer credit.

The Debtor contends that the repayment of the Tax Credit is a debt that was incurred in either 2008 (the purchase date) or 2010 (the year repayment began). She claims that she has repaid $3,500 of the Tax Credit and that $4,000 remained unpaid at the time she filed her

2

bankruptcy petition. Finally, she asserts that the debt owed to the IRS is neither a priority debt nor a non-dischargeable debt, and therefore, is dischargeable.

The IRS characterizes the Debtor's obligation as a tax, *i.e.*, she is statutorily required to recapture, report, and pay $500 in tax on her federal income tax returns for tax years 2017 through 2024. Therefore, the IRS argues, no tax debt or claim exists that can be discharged; the obligation is based only upon the Debtor's potential future tax liabilities associated with recapturing the Tax Credit.

DISCUSSION

The IRS' position hinges on the interpretation of the recapture as a tax to be collected as opposed to the repayment of a prepetition debt or loan, relying on *In re Bryan*, 2014 WL 789089 (Bankr. N.D. Cal. February 27, 2014). This Court does not find the *Bryan* case persuasive. The court in *Bryan* characterizes the obligation to repay the new homebuyer tax credit as a nondischargeable tax rather than a dischargeable general obligation, but its analysis is limited to one point: "The crucial fact is that Congress imposed the obligation to repay the credit as a tax." *Id.* at *1. As an initial matter, the Court questions the *Bryan* court's characterization of the obligation as a tax versus a loan. The IRS, in its own news release about the Tax Credit, states that "the credit operates much like an interest-free loan because it must be repaid over a 15-year period." IR-2008-106 (I.R.S.), 2008 WL 4203757 (Sept. 16, 2008). Furthermore, as the Debtor notes, the IRS' own official Instructions for Form 5405 are subtitled "Repayment for the First-Time Homebuyer Credit" and both the instructions and the Form itself are littered with references to "repayment" of the Tax Credit. The IRS uses similar language in its own briefing: "Betancourt is statutorily required … to pay…," "the taxpayer owes…" -- lending credence to the view of the Tax Credit as a loan.

3

In addition, it is this Court's view that the crucial issue is not whether the obligation is a tax or a loan, but whether it constitutes a debt within the meaning of the Bankruptcy Code. The term "debt" is defined in the Code as "liability on a claim." 11 U.S.C. §101(12). The term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…." 11 U.S.C. §101(5)(A). That definition reflects Congress' broad view of the class of obligations that qualify as a "claim" giving rise to a "debt." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). *See also In re Freeman-Clay*, 578 B.R. 423, 439 (Bankr. W.D. Mo. 2017)("[T]he definition of claim contained in the Bankruptcy Code is extremely broad and specifically includes disputed claims and other claims not presently enforceable such as contingent and unliquidated claims.")(citing *Midland Funding L.L.C. v. Johnson*, 137 S.Ct. 1407, 1412 (2017)); *In re Edge*, 60 B.R. 690, 692-93 (Bankr. M.D.Tenn. 1986)("[B]y using the broadest possible language to describe the rights to payment which constitute the claims under subsection [101(5)(A)], Congress expressed unequivocally the intention that all monetary rights be asserted and resolved in the bankruptcy proceeding.")(citations omitted). Nothing in the Code or relevant case law supports what appears to be the conclusion drawn in *Bryan* that a tax obligation does not qualify as a claim or debt. In fact, the Code expressly provides for tax "claims" in its priority scheme. 11 U.S.C. §507(a)(8).

The existence of a valid bankruptcy claim depends on whether the claimant possessed a right to payment, and whether that right arose before the filing of the petition. *In re Manville Forest Prods. Corp.*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998). With regard to the first element, the Supreme Court has said that a right to payment "is nothing more nor less than an enforceable obligation." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559

4

(1990). The fact that, as the IRS notes, a taxpayer must file a return and report the Tax Credit even if that taxpayer earns no income and is not required to file a federal income tax return, provides further support for the conclusion that the IRS has a right to payment that fits within the statutory definition of claim. Based on the facts before it and the definitions set forth in the Code, the Court concludes that the IRS possesses a right to payment.

The IRS asserts that if the Debtor meets one of the statutory exceptions (*e.g.,* death or sale of the residence), then she may not even owe the recapture amount. Therefore, because the Debtor may be relieved of the obligation to repay the Tax Credit, the IRS does not have a "right to payment" of any recaptured amount. The IRS, however, is ignoring the plain language of the statute. As noted previously, the Bankruptcy Code's definition of "claim" expressly includes a contingent or unliquidated right to payment. "The House and Senate Reports state that '[b]y this broadest possible definition [of the term "claim"]…the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.' " H.R. Rep. No. 95-595, at 309 (1977); S. Rep. No. 95-989, at 22 (1978). Thus, even if the Debtor's obligation to repay the Tax Credit may be contingent (or in the IRS' own words, "a potential future tax liability"), the IRS still has an enforceable obligation, *i.e.*, right to payment, within the definition of "claim" under §101(5).

Section 1305 states that a proof of claim may be filed by an entity that holds a claim against the debtor for "taxes that become payable to a governmental unit while the case is pending…." The Code is silent as to when taxes become payable. The IRS relies on §1305 and *In re Ripley*, 926 F. 2d 440 (5th Cir. 1991), to support its position that it does not have a claim for the Tax Credit payments for which the Debtor may be liable from 2017 through 2024 because those taxes are not "payable" at this time. The debtors in *Ripley,* however*,* owed self-

5

employment taxes that had to be estimated by the debtors and paid in four quarterly installments. The court held that these taxes became payable when the debtors' tax return was filed: "At the time the petition is filed, the IRS does not even know that it is owed any money….Consequently, it could not accurately estimate the tax debt." *Id.* at 449. Other courts have assigned different meanings to the term "payable" than the one on which the IRS relies. For example, the court in *In re Senczyszyn*, 444 B.R. 750 (E.D. Mich. 2011), rejected the reasoning in *Ripley*, and held that taxes become payable when they are "theoretically determinable." *Id.* at 761. The court reasoned: "Tax liability is *not* incurred only after the tax year is over but before the tax has been paid." *Id.*(emphasis in original). This interpretation, the court noted, is "the only reasonable meaning to be affixed to the word as it is used in section 1305" given the congressional record behind the statute. *Id. See also In re Joye*, 578 F.3d 1070 (9th Cir. 2009)(section 1305 allows a governmental entity to file a proof of claim for taxes that become payable while the case is pending). In this case, the IRS knew when the Debtor filed for bankruptcy that she owed the remainder of the Tax Credit, and could have easily estimated the debt given the statutory repayment schedule. Therefore, the Court rejects the IRS' argument that it does not have a claim for any Tax Credit payments owed by the Debtor for the years subsequent to her bankruptcy filing.

On the question of whether the IRS' right to payment arose before the filing of the Debtor's petition, the Court finds that it did. Courts have generally utilized three approaches when making this determination: 1) the accrued state law claim approach; 2) the conduct approach; and 3) the pre-petition relationship approach. *In re Cleveland*, 349 B.R. 522, 529 (Bankr. Tenn. 2006)(citations omitted). This Court will discuss the latter two approaches as those are the ones most commonly adopted.

The conduct approach focus on when the underlying acts or conduct forming the basis of the right to payment occurred. *Id.* (citations omitted). The IRS argues that because it has no right to the recapture amount until it becomes payable (in the future), no claim, and therefore, no prepetition debt exists for the remaining amount of the Tax Credit that has not yet been recaptured. Applying this reasoning would lead to an absurd conclusion. As the Debtor points out, it would be analogous to a mortgagee asserting that the mortgage obligation is not enforceable except once a month when the amortized amount is payable. The court in *In re Fretter, Inc.,* 2000 WL 1780256 (Bankr. N.D. Ohio Sept. 29, 2000), addressed this very issue: "A claim does not arise post-petition simply because the time for payment is triggered by an event that happens after the filing of the petition. As a result, 'it is possible that a right to payment that is not yet enforceable at the time of filing of the petition under non-bankruptcy law, may be defined as a claim with §101(5)(A) of the Bankruptcy Code.' " *Id.* at *3 (citations omitted). *See also In re Cleveland,* 349 B.R. at 532 (creditor had been entitled to payment from the date the debtor executed the deed of trust, even if debtor's obligation to pay escrow funds constituted an unmatured liability). Here, the Debtor purchased the home and claimed the Tax Credit before she filed bankruptcy. That conduct unquestionably gave rise to her obligation to the IRS, no matter when that obligation is payable.

The relationship approach focuses on whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. *Id.* Accordingly, "where the parties could have fairly contemplated a claim prior to bankruptcy, the claim will be held to have arisen pre-petition, even when the actual right to payment matures post-petition." *In re Emelity*, 251 B.R. 151, 156 (Bankr. S.D. Cal. 2000). In this case, there is no dispute that the Debtor and the IRS had a

7

relationship by virtue of the Tax Credit which pre-dated the date on which the Debtor filed her bankruptcy petition. The IRS was aware from the outset of this bankruptcy case that the Debtor would be required to make the recapture payments required by the Tax Credit. The Debtor claimed that credit by submitting Form 5405 with her 2008 tax return. This bolsters the Debtor's position that her obligation, and the IRS' right to payment, arose pre-petition.

The IRS argues that the Debtor's position conflicts with other provisions of the Internal Revenue Code, namely a statute of limitations that bars the IRS from collecting taxes more than ten years after assessment. 26 U.S.C. §6501(a). Thus, if $7,500 were assessed against the Debtor in 2008 or 2010, the limitations statute would prohibit the IRS from collecting any payments related to the Tax Credit after 2018 or 2020. This, the IRS asserts, defies logic. The application of §6501 focuses on when the particular tax was assessed, an issue not before this Court, nor is it relevant here. While the so-called conflict may be an anomaly, it does not change the Court's conclusion that the IRS has a prepetition claim against the Debtor, in light of the other considerations that overwhelmingly support it.

## CONCLUSION

Based on the pre-petition relationship between the IRS and the Debtor originating from the Debtor's act of claiming the Tax Credit, the Court finds that the IRS does in fact have a right to payment that is covered within the definition of "claim" set forth in §101(5)(A), therefore, a "debt" under §§101(12) and 1328, that arose pre-petition. The $4,000 in recapture payments owed to the IRS is not a priority tax debt under §507 nor does it fit any of the enumerated exceptions to discharge under §523. Accordingly, the debt is dischargeable.

Date: February 1, 2018         /s/ Dennis R. Dow
                               THE HONORABLE DENNIS R. DOW
                               UNITED STATES BANKRUPTCY JUDGE